410 A.2d 358

**COMMONWEALTH of Pennsylvania**

**v.**

**James Vincent SANDUTCH, Appellant.**

Superior Court of Pennsylvania.

Argued July 9, 1979.

Filed Sept. 14, 1979.

Reargument Denied Dec. 12, 1979.

Petition for Allowance of Appeal Granted Dec. 21, 1979.

482

Norma Chase, Pittsburgh, for appellant.

Anthony J. Lucadamo, Hazleton, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

WEKSELMAN, Judge:

The Commonwealth alleges that on the night of February 13, 1976, appellant, James Mastrota, Henry Mangum, and others engaged in a series of crimes starting with the theft of a CB radio, followed by a burglary and culminating in the firebombing of the home of Luzerne County Deputy Sheriff Eugene Boyarski in the early morning hours of February 14,

---

* Justice ROBERT N. C. NIX, Jr. of the Supreme Court of Pennsylvania and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

1976. Boyarski, his wife and three children died in the ensuing fire. Appellant was tried and convicted of criminal conspiracy, arson, and five counts of second degree murder. After denial of his post-trial motions, he was sentenced to two consecutive and three concurrent life terms on the murder charges, and a consecutive seven and a half to fifteen year term on the arson charge. Sentence was suspended on the conspiracy charge. These judgments of sentence are now before the Court on appellant's direct appeal.

At the post-trial motion stage, appellant sought an arrest of judgment and further assigned some 15 trial errors which he contended entitled him to a new trial. On appeal, four issues have been preserved for determination by this Court, one of which we find persuasive and which requires us to reverse the judgments of sentence and remand the matter to the Court below for a new trial.[1] As indicated in the margin, the Commonwealth was permitted to play a tape recording of Mastrota's preliminary hearing testimony after Mastrota became unavailable by invoking his 5th Amendment privilege against self-incrimination. Mangum had testified to the evening's activities and that he had accompanied Mastrota and appellant to an alley near the Boyarski home where he waited in the car. He testified that he did not see the actual throwing of the firebomb but did see

1. Appellant contends that the trial court abused its discretion in failing to grant a change of venue, that it erred in permitting Mangum to testify regarding the crimes committed by appellant earlier on the night of the firebombing, and that it erred in permitting the Commonwealth to play the tape recording of Mastrota's preliminary hearing testimony, Mastrota having invoked his privilege against self-incrimination at trial. Appellant concedes that the invocation of the 5th Amendment privilege rendered Mastrota "unavailable" for purposes of the hearsay rule, but contends that his then counsel was so ineffective at the preliminary hearing as to nullify appellant's opportunity to conduct cross-examination of Mastrota. He specifically contends that his then counsel failed to challenge Mastrota's credibility either by referring to a prior murder conviction or by asking about a possible deal between Mastrota and the Commonwealth. He further points out that his then counsel had previously represented Mastrota and might have been inhibited in his cross-examination by attorney-client privilege considerations. Since we find another allegation of error to be meritorious, we neither reach nor decide these issues.

flames from the burning house. Mastrota's preliminary hearing testimony was to the effect that he threw the firebomb after appellant lit it. Mastrota's preliminary hearing testimony thereby became a critical part of the Commonwealth's case since Mastrota was the only person who directly linked appellant to the crimes for which he was convicted.

Subsequent to the introduction of Mastrota's preliminary hearing testimony, appellant sought to impeach his credibility by the introduction of a tape recording made by Mastrota in which he recanted his preliminary hearing testimony and a verified suppression application filed in Mastrota's own case wherein Mastrota stated that his previous statements were made under duress and were not true. These subsequent inconsistent statements were excluded as hearsay by the trial Court.

We conclude that this evidence was not excludable hearsay. The evidence was not offered for the truth of the matter asserted in these out-of-court declarations but merely to impeach the credibility of the statement offered by the Commonwealth. For that reason, the Commonwealth's lack of opportunity to cross-examine Mastrota regarding these statements is of no significance. *Patterson v. Dushane*, 137 Pa. 23, 20 A. 538 (1890); *Baird v. Unemployment Compensation Board of Review*, 30 Pa.Cmwlth. 118, 372 A.2d 1254 (1977); *Baldi v. Metropolitan Life Insurance Company*, 18 Pa.Super. 599 (1902). Such evidence as the Commonwealth possessed to impeach the credibility of the recantation might have been used by it to rehabilitate the pre-trial hearing testimony and the matter of the credibility of that testimony would then have been properly submitted to the jury to pass upon. The Commonwealth fails to recognize the distinction between out-of-court declarations offered for the truth of the matter contained therein and those offered merely to impeach the credibility of in-court testimony. Nor was the error rectified by the admission of Mastrota's testimony at the suppression hearing in his own case. While this testimony was obviously of some aid to appellant, its primary thrust

went to the voluntariness of Mastrota's own confession as distinguished from its truthfulness. Inasmuch as Mastrota was the principal witness against appellant, we believe that the trial Court erred in permitting his out-of-court statement to be used against appellant while denying appellant the right to impeach that statement with another out-of-court statement. In the context of this case, we cannot find such error to have been harmless beyond a reasonable doubt.

Judgments of sentence reversed and case remanded to the court below for new trial.